

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-28-2009

# Paul McGovern v. City of Philadelphia

Precedential or Non-Precedential: Precedential

Docket No. 08-1632

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"Paul McGovern v. City of Philadelphia" (2009). *2009 Decisions.* Paper 1950.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1950

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-1632

———

PAUL MCGOVERN,
                              Appellant

v.

CITY OF PHILADELPHIA

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No.: 07-cv-03817)
District Judge: Honorable Paul S. Diamond

———

Submitted Under Third Circuit LAR 34.1(a)
January 8, 2009

Before: CHAGARES and HARDIMAN, *Circuit Judges* and
ELLIS,[*] *District Judge*

(Filed: January 28, 2009)


Mark S. Scheffer
Suite 1B
50 West Welsh Pool Road
Exton, PA 19341
 *Attorney for Appellant*

Eleanor N. Ewing
City of Philadelphia
Law Department
17th Floor
1515 Arch Street
One Parkway
Philadelphia, PA 19102-0000
 *Attorney for Appellee*

———

OPINION OF THE COURT

———

———

[*]The Honorable Thomas Selby Ellis, III, Senior District
Judge for the United States District Court for the Eastern
District of Virginia, sitting by designation.

HARDIMAN, *Circuit Judge*.

In this appeal we consider whether a private right of action against state actors can be implied under 42 U.S.C. § 1981.  We join five of our sister circuits in holding that it cannot.

I.

Paul McGovern, a Caucasian male, was hired by the City of Philadelphia (City) as an Administrative Support Specialist in 1994 and was promoted to Network Administrator in 2001. On September 25, 2003, McGovern filed a complaint of race discrimination with the Equal Employment Opportunity Commission (EEOC) pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*  A year later, McGovern received a Right to Sue Letter from the EEOC, but  took no further action on his Title VII claim.[1]

On December 21, 2004, the City terminated McGovern's employment, citing performance and behavioral deficiencies. Almost three years later,  McGovern sued the City in the United States District Court for the Eastern District of Pennsylvania,

---

[1]A claimant is required to file a Title VII suit within 90 days of receiving a Right to Sue Letter.  42 U.S.C. § 2000e-5(f)(1); *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 239 (3d Cir. 1999).

alleging race discrimination in violation of 42 U.S.C. § 1981.[2]
The City moved to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6), arguing that § 1981 does not provide a
cause of action — either express or implied — against state
actors. The District Court granted the City's motion and
McGovern filed a timely appeal.

## II.

The District Court had jurisdiction over McGovern's civil
rights claim under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).
Appellate jurisdiction exists pursuant to 28 U.S.C. § 1291 and
we exercise plenary review over the District Court's order
granting the City's Rule 12(b)(6) motion. *Edgar v. Avaya, Inc.*,
503 F.3d 340, 344 (3d Cir. 2007). We accept all well-pleaded
allegations in the complaint as true and draw all reasonable
inferences in McGovern's favor. *Miller v. Fortis*, 475 F.3d 516,
519 (3d Cir. 2007). The District Court's judgment is proper
only if it is clear that "no relief could be granted under any set
of facts that could be proved consistent with the allegations."
*Brown v. Card Serv. Ctr.*, 464 F.3d 450, 456 (3d Cir. 2006)
(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

---

[2]In addition to abandoning his Title VII suit, McGovern
concedes that any potential claim under 42 U.S.C. § 1983 would
be barred by its two-year statute of limitations. *Sameric Corp.
v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

III.

Having lost the opportunity to bring a timely claim under either Title VII or 42 U.S.C. § 1983, McGovern seeks refuge under 42 U.S.C. § 1981, which has a four-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (citing 28 U.S.C. § 1658(a)). Conceding that § 1981 does not explicitly provide a private right of action, McGovern argues that the rights-creating language of § 1981 implies a private right of action. In evaluating McGovern's argument, we must examine not only the rights-creating language of § 1981, but we must also consider whether it provides a remedy. As the Supreme Court acknowledged long ago, this is not a matter of semantics: "The distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury." *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 384 (1918).

Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578 (1979). Accordingly, we employ a two-step inquiry for determining whether a private right of action exists under a federal statute: (1) whether Congress intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff. *See Anderson v. Sandoval*, 532 U.S. 275, 286 (2001); *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh,* 382 F.3d 412, 421 (3d Cir. 2004). Only if we can affirmatively answer both parts of the inquiry will we hold that

an implied private right of action exists in a federal statute. *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007).

A plaintiff asserting a violation of a federal statute must address both aspects of this rights-remedies dichotomy. In determining whether McGovern has met this burden, we first look to the language of the statute:

(a) **Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court held that § 1981, while providing extensive rights, does not itself provide a remedy against state actors. *Id.* at 731. In *Jett*, a white high school teacher and football coach sued his employer under § 1981 after he was reassigned following a dispute with the school's black principal. The Supreme Court rejected Jett's § 1981 claim, holding that the exclusive federal remedy against state actors for violation of rights guaranteed in § 1981 is 42 U.S.C. § 1983,

6

which provides that every person who, under color of law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." *See id.* at 723, 735. Stated differently, while § 1981 creates *rights*, § 1983 provides the *remedy* to enforce those rights against state actors.

In reaching its decision in *Jett*, the Supreme Court examined the relationship between the Civil Rights Act of 1866 (which created the rights now enumerated in § 1981), and the Civil Rights Act of 1871 (which enacted the precursor to § 1983). *See Jett*, 491 U.S. at 713-31. The Court concluded that although the 1866 Act did not contain its own remedial provision, Congress enacted the 1871 Act "to expose state and local officials to a new form of liability" that did not exist under § 1981. *Id.* at 723. In other words, Congress believed the 1871 bill was necessary because no federal cause of action yet existed to enforce civil rights violations by state actors. When a rights-creating statute contains no express cause of action, courts may either find that a private cause of action is implicit in the rights-creating statute or that a means of enforcing that right is contained elsewhere in federal law. *See Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th Cir. 2008). Even though the rights-creating statute (§ 1981) contained no express cause of action, the Supreme Court found that a means of enforcing

7

that right against state actors existed in a separate federal provision (§ 1983). *Jett*, 491 U.S. at 731.[3]

IV.

McGovern acknowledges that *Jett*, standing alone, precludes a § 1981 claim against a municipality. He argues, however, that *Jett* was superseded by the Civil Rights Act of 1991, which amended § 1981 by adding two subsections that provide:

(b) **"Make and enforce contracts" defined**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits,

---

[3]By contrast, the *Jett* Court held that § 1981 created an implied cause of action against *private* actors because no other federal statute provided a remedy against them. *Jett*, 491 U.S. at 732. Because § 1983 provided a remedy against persons discriminating under color of state law, the Court declined to read an implied cause of action against *state* actors into § 1981. *Id*. The Court explained: "That we have read [§ 1981] to reach private action and have implied a damages remedy to effectuate the declaration of rights contained in that provision does not authorize us to do so in the context of the 'state action' portion of § 1981, where Congress has established its own remedial scheme." *Id*. at 731.

> privileges, terms, and conditions of the
> contractual relationship.
>
> (c) **Protection against impairment**
>
> The rights protected by this section are protected
> against impairment by nongovernmental
> discrimination and impairment under color of
> State law.

42 U.S.C. § 1981(b), (c). While conceding that the amendments did not establish an express cause of action, McGovern contends that the addition of language protecting rights against "impairment under color of State law" abrogated the holding in *Jett* by creating an implied private right of action against state actors beyond that provided by § 1983.

Since its enactment, six circuits have considered whether the Civil Rights Act of 1991 created an implied private right of action. All but one of these courts have held that Congress did not create such a cause of action in amending § 1981. *Compare Arendale*, 519 F.3d at 598-99 ("[N]o independent cause of action against municipalities is created by § 1981(c)."), *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006) ("We therefore conclude that even after the 1991 amendments to § 1981, damages claims against state actors for § 1981 violations must be brought under § 1983."), *Oden v. Oktibbeha County*, 246 F.3d 458, 463-64 (5th Cir. 2001) ("[W]e are not willing to deviate from the Supreme Court's analysis of § 1981 in *Jett*."), *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) ("§ 1981(c) makes clear that the section creates a

9

right that private or state actors may violate but does not itself create a remedy for that violation."), *and Dennis v. County of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995) ("We do not believe that [*Jett*] was affected by the Civil Rights Act of 1991, which added subsection (c) to § 1981."), *with Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996) ("[W]e conclude that the amended 42 U.S.C. § 1981 contains an implied cause of action against state actors, thereby overturning *Jett*'s holding . . . .").

Without attempting to distinguish his case from the five adverse appellate decisions, McGovern focuses upon the Ninth Circuit's opinion in *City of Oakland*. In finding that § 1981(c) contained an implied remedy against state actors, the Ninth Circuit Court reasoned that the goal of § 1981(c) was to ensure "that § 1981 rights are to receive parallel protections against state actors and private actors." *Id.* at 1213. Accordingly, the court stated:

> Because § 1981(c) affords *identical protection* against "impairment by nongovernmental discrimination" and "impairment under color of State law," and because § 1981(c) implicitly codifies an implied cause of action against private defendants, we infer that § 1981(c) *also* contains an implied cause of action against state actors who "impair" a claimant's § 1981 rights.

10

*Id.* at 1213 (emphasis in original). Because § 1981(c) implied a right of action against *private* defendants, the Ninth Circuit found that a comparable remedy was necessary to achieve "parallel protection" for suits against *public* defendants. *See id.*

In our view, the Ninth Circuit's reasoning is inconsistent with  the logic of *Jett*, which held that courts should not imply rights of action where Congress has already established a different remedial scheme. *See Jett*, 491 U.S. at 731. In other words, § 1981(c) can establish equal *rights* for parties against private and state defendants without establishing equal *remedies*; the fact that § 1981(c) establishes a private right of action against private defendants does not lead to the conclusion that a parallel right must exist for suits against state defendants if such actions are provided for elsewhere in the statutory scheme. *See id.* Indeed, federal courts often view the availability of other enforcement mechanisms in a statutory scheme as preclusive of an implied cause of action. *See, e.g.*, *Touche Ross & Co.*, 442 U.S. at 571-72.

In assessing whether a private cause of action is implied in a statute that does not expressly provide one, the Ninth Circuit in *City of Oakland* applied the four-factor test established by the Supreme Court in *Cort v. Ash*, 422 U.S. 66 (1975). That test requires courts to consider: (1) whether the plaintiff is a member of the class for whose "especial benefit" the statute was enacted; (2) whether there was legislative intent to create such a remedy; (3) whether implying a remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether this type of cause of action is traditionally relegated to state law. *Id.* at 78.

11

In relying on *Cort*, however, the Ninth Circuit failed to recognize, as we have done previously, that *Cort* has been "altered . . . virtually beyond recognition" by subsequent decisions of the Supreme Court. *Wisniewski*, 510 F.3d at 299. For instance, in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), the Supreme Court moved away from *Cort*'s multi-factor analysis, instead focusing on the second *Cort* factor by stating that its task is simply to determine whether "Congress intended to make a remedy available." *Id.* at 688. Later that year, the Court declared: "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co.*, 442 U.S. at 575. Thus, the interpretive task is "limited solely to determining whether Congress intended to create the private right of action." *Id.* at 568. Finally, and most recently, in *Anderson v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court established the following method for determining whether an implied right of action exists:

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

12

*Id.* at 286-87 (internal citations omitted).[4]

In the aftermath of *Sandoval* and its post-*Cort* predecessors, we have made Congressional intent the "sole touchstone of our inquiry." *Wisniewski*, 510 F.3d at 303. Though the Supreme Court has not provided a test for discerning this intent, the Court has examined factors such as: the text and structure of the statute; the existence or non-existence of a comprehensive remedial scheme elsewhere in the same statute; the statute's legislative history; and Congress's explicit creation of private rights in similar statutes enacted during the same time period. *Id.*

We begin by assessing the text and structure of § 1981(c), which provides that "[t]he rights protected by [§1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law." *Sandoval*, 532 U.S. at 288. The Ninth Circuit placed great weight on the inclusion of language protecting § 1981 rights from impairment by both private and governmental entities. *See City of Oakland*, 96 F.3d at 1213. We find this approach wanting because it fails to recognize the distinction between rights and remedies. The fact that § 1981(c) places an individual's *rights* on equal footing against discrimination by private and public actors does not necessarily imply the existence of an equal *remedy* against all defendants. *See Butts*,

[4]Although the Supreme Court did not expressly reject the *Cort* factors in *Sandoval*, it did not use them to guide its inquiry. *Wisniewski*, 510 F.3d at 300.

13

222 F.3d at 894. This is especially true where, as here, Congress has already provided an effective means of vindicating a plaintiff's rights elsewhere in federal law. *See Jett*, 491 U.S. at 731. The mere mention of "rights" does not, without more, establish a private right of action. *Arendale*, 519 F.3d at 596.

Going beyond the text and structure of the statute, the legislative history of the Civil Rights Act of 1991 belies any claim that Congress was concerned with *Jett* when amending the statute. One of the stated purposes of the Act was "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Civil Rights Act of 1991, § 3(4), Pub. L. No. 102-166, 105 Stat. at 1071 (1991). The House Report on the bill explained that the Supreme Court "cut back dramatically on the scope and effectiveness of civil rights protections, and that as a result, existing protections and remedies [were] not adequate to deter unlawful discrimination or to compensate victims of intentional discrimination." H.R. Rep. No. 102-40(I), at 18 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 556. Thus, we must determine whether *Jett* was one of the decisions that Congress believed "cut back dramatically" on civil rights protections.

The legislative history shows that the addition of subsection (b) was targeted at *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), which Congress declared had a "disastrous" impact on race discrimination claims by narrowly interpreting the meaning of "make and enforce contracts" in § 1981. H.R. Rep. No. 102-40(II), at 36 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 731. *Patterson* held that the "make and

14

enforce" language of § 1981 prohibited discrimination only at the formation of a contract and did not prohibit racial harassment on the job or other forms of race discrimination occurring after the formation of a contract such as breach of the terms of the contract or imposition of discriminatory working conditions. *See Patterson*, 491 U.S. at 176-77. Dissatisfied with this narrow reading, Congress added subsection (b) which broadened the definition of "make and enforce" to include "the making, performance, modification, and termination of contracts." 42 U.S.C. § 1981(b).

More relevant to McGovern's case, subsection (c) was intended to codify *Runyon v. McCrary*, 427 U.S. 160 (1976), in which the Supreme Court held that § 1981 prohibited intentional racial discrimination in private, as well as public, contracting. H.R. Rep No. 102-40(II), at 37 (1991). This reading comports with the goals of the 1866 Act, which rendered all racial discrimination illegal, even if it occurred in private. The Supreme Court questioned *Runyon*'s holding in *Patterson*, however, but ultimately decided not to overrule *Runyon* on grounds of *stare decisis*. *Patterson*, 491 U.S. at 172-73. Wary of the fact that future courts might not employ the principle of *stare decisis*, Congress established § 1981(c) to codify the holding of *Runyon*. *See Arendale*, 519 F.3d at 598. However, this codification accounted for rights only; § 1981(c) created a substantive *right* that both private and state actors must refrain from violating, but the amendment did not create a *remedy* for that violation. *See Butts*, 222 F.3d at 894.

Nothing in the 1991 amendments or its legislative history evinces Congress's desire to alter the Supreme Court's

15

conclusion in *Jett*, nor was *Jett* even mentioned despite the fact that it was decided less than two years before Congress enacted the 1991 Act. "[O]nly one who never relies on committee reports would fail to be impressed by the total absence in the committee reports of any mention of *Jett* . . . ." *Bolden*, 441 F.3d at 1137. Given the long-favored rule of statutory construction that "repeals by implication are not favored," *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 285 (3d Cir. 2006) (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)), we would expect much more than complete silence if Congress intended to set aside such a notable ruling. *See United States v. Wasserson*, 418 F.3d 225, 235 n.7 (3d Cir. 2005).

In sum, because Congress neither explicitly created a remedy against state actors under § 1981(c), nor expressed its intent to overrule *Jett*, we hold that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett*, 491 U.S. at 833. Accordingly, McGovern's § 1981 claim must fail.

V.

Even if we were to recognize a cause of action under § 1981, McGovern's claim against the City was appropriately dismissed for an independent reason: he did not allege that the discrimination he suffered was pursuant to an official policy or custom of the City. In *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality may not be held vicariously liable for the federal constitutional or statutory violations of its employees.

16

*See id.* at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent officially policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

Although *Monell* concerned § 1983 actions, the Supreme Court in *Jett* extended *Monell* to cases arising under § 1981. 491 U.S. at 735-36. As even the Ninth Circuit recognized in *City of Oakland*, the 1991 Act did not relieve plaintiffs of their obligation under § 1981 to allege that their injury was caused by an official policy or custom. 96 F.3d at 1205. Consequently, McGovern was required to show that the City "implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated," or acted "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690-91. Because McGovern's complaint fails to allege that the City's employees acted pursuant to an official policy or custom, the District Court properly dismissed his claim.[5]

_____

[5]McGovern's assertion that he should be entitled to discovery in order to marshal facts to support his theory that the City discriminated against him pursuant to an official policy or custom is misguided. Our review of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is limited to the contents of the complaint. *Yarris v. County of Delaware*, 465 F.3d 129, 134 (3d Cir. 2006). Nowhere in his complaint does McGovern allege that the City maintained a policy or

17

VI.

"It is not the province of a federal court to confer rights where statutory language is silent, or to 'engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.'" *Am. Trucking Ass'n, Inc. v. Del. River Joint Toll Bridge Comm'n*, 458 F.3d 291, 302 (3d Cir. 2006) (quoting *California v. Sierra Club,* 451 U.S. 287, 297 (1981)). Congress, in promulgating § 1983 over a century ago, established that section as the exclusive remedy for violations of § 1981 by state actors. Nothing in the subsequent history, including the amendments to the 1991 Act, changed that remedial scheme. "[W]hatever the limits of the judicial power to imply or create remedies, it has long been the law that such power should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute." *Jett*, 491 U.S. at 732. Accordingly, we join five of our sister circuits in holding that no implied private right of action exists against state actors under 42 U.S.C. § 1981. We affirm the District Court's grant of the City's motion to dismiss.

---

custom to retaliate against or otherwise mistreat Caucasian employees. Absent such an allegation, McGovern has not stated a *prima facie* case, and the District Court properly dismissed the claim without permitting discovery. *See Marran v. Marran*, 376 F.3d 143, 156 (3d Cir. 2004).

18