**William ORTIZ, Plaintiff,**

v.

**THE CITY OF NEW YORK, Defendant.**

**No. 10 Civ. 3576(BMC).**

United States District Court, E.D. New York.

Dec. 13, 2010.

Eric Sanders, Jeffrey L. Goldberg, Jeffrey L. Goldberg, P.C., Lake Success, NY, Susan P. Bernstein, Jeffrey L. Goldberg P.C., New Hyde Park, NY, for Plaintiff.

Maxwell Douglas Leighton, New York City Law Department, New York, NY, for Defendant.

### MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

This case is before me on defendant's motion to dismiss. The City of New York argues that this 42 U.S.C. § 1981 civil rights action must be dismissed because the complaint fails to state a plausible claim and because a re-pled 42 U.S.C. § 1983 action would not be timely. I conclude that § 1983 provides the exclusive

cause of action for § 1981 claims against state actors. However, because the claim is plausible and the action would be timely if properly pled under § 1983, I deny the City's motion to dismiss.

## BACKGROUND

Plaintiff William is a former police officer with the NYPD. He retired in 2004, but ten months later, applied for reinstatement. Ortiz was reinstated on August 28, 2006, more than a year after he applied, without retaining his seniority, and consequently, with a lower salary. Ortiz alleges that this loss of seniority was caused by the NYPD's pattern and practice of discriminating in the reinstatement process. Specifically, he claims that "similarly situated Caucasian officers were reinstated with their seniority and salary intact."

More importantly for this motion, Ortiz filed his one-count complaint on August 4, 2010, claiming a violation of 42 U.S.C. § 1981. The City moved to dismiss, arguing that 42 U.S.C. § 1983 provides the sole remedy against state actors for rights asserted under § 1981, and that amending the complaint would be futile because a § 1983 action would be untimely and would still fail to state a claim.

## DISCUSSION

The City's motion to dismiss raises two legal issues that remain unsettled in this Circuit. I address them under the more general questions of whether the complaint states a plausible claim for relief under § 1981 and, if it does not, whether amending the complaint to bring a § 1983 action would be futile because it would fail to state a claim and would not be timely.

### I. Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), this Court "accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*, 595 F.3d 86, 91 (2d Cir.2010). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *accord Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009)). In other words, a complaint must contain factual allegations to support the legal conclusions and the factual allegations must "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.

A motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations. *See e.g., Allen v. Dairy Farmers of Am., Inc.*, No. 09–230, 748 F.Supp.2d 323, 353–54, 2010 WL 3430833, at *24, 2010 U.S. Dist. LEXIS 90309, at *74–75 (D.Vt. Aug. 30, 2010) ("A statute of limitations analysis is generally riddled with questions of fact which *the Defendants* must establish in order to bar Plaintiffs' claims.... Accordingly, unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.") (quotation marks and citation omitted). Nonetheless, the Second Circuit has held that as long as the affirmative defense is based on the facts alleged in the complaint, it may be raised on a motion to dismiss. *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir.2004); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989). District courts, however, have not dismissed actions as untimely on Rule 12(b)(6) motions unless the "complaint shows *clearly* that a claim is not timely." *Robert Smalls Inc. v. Hamilton*,

No. 09–7171, 2010 WL 3238955, at *9, 2010 U.S. Dist. LEXIS 83643, at *32 (S.D.N.Y. July 19, 2010) (internal quotation marks and citation omitted, emphasis added).

## II. Whether the complaint can be maintained as a § 1981 action against the City?

■ The City argues that the complaint fails to state a claim because the exclusive federal remedy against state actors for violating rights guaranteed by § 1981 is § 1983.[1] This is the holding of *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Shortly after *Jett*, Congress passed the Civil Rights Act of 1991, which, *inter alia*, added two subsections to § 1981. Subsection (c) states that the "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." Several courts—most notably the Ninth Circuit in *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir.1996)—have held that this provision abrogated *Jett* by adding to § 1981 an implied private right of action against state actors.

The weight of authority, however, rejects the proposition that *Jett* has been statutorily abrogated. All six other appellate courts to consider the issue have disagreed with *City of Oakland*. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 117 (3d Cir.2009); *Arendale v. City of*

*Memphis*, 519 F.3d 587 (6th Cir.2008); *Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir.2006); *Oden v. Oktibbeha County*, 246 F.3d 458 (5th Cir.2001); *Butts v. County of Volusia*, 222 F.3d 891 (11th Cir.2000); *Dennis v. County of Fairfax*, 55 F.3d 151 (4th Cir.1995). The Second Circuit has not weighed in, *see Anderson v. Conboy*, 156 F.3d 167, 178 n. 19 (2d Cir. 1998), but the vast majority of district courts in the Circuit—albeit with little or no analysis—have held that § 1981(c) did not overrule *Jett*. *See Gladwin v. Pozzi*, No. 06–cv–0650, 2010 WL 245575, at *7, 2010 U.S. Dist. LEXIS 5091, at *17–18 (S.D.N.Y. Jan. 21, 2010) (collecting cases); *but see Robinson v. Town of Colonie*, 878 F.Supp. 387, 405 n. 13 (N.D.N.Y.1995).

■ In this Circuit, the analysis for determining whether a private cause of action is implied, turns on Congressional intent, even if all the factors set out in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), continue to inform the analysis.[2] *See Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 53 n. 3 (2d Cir.2009); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 619 n. 7 (2d Cir.2002) ("the remaining *Cort* factors (other than congressional intent) now enter into the analysis only as possible indicia for legislative intent."); *Lopez v. JetBlue Airways*, No. 10–CV–1552, 2010 WL 3311428, at *2, 2010 U.S. Dist. LEXIS 85457, at *5–6 (E.D.N.Y. Aug. 19, 2010) ("Without a showing of congressional in-

---

**1.** Title 42 U.S.C. § 1981(a) provides:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**2.** These factors are: (1) legislative intent, (2) the consistency of the remedy with the underlying purposes of the legislative scheme, (3) whether the plaintiff was a member of the class for whose benefit the statute was enacted, and (4) whether the cause of action is one traditionally relegated to state law. *See Lindsay*, 581 F.3d at 52.

tent, 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'") (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286–87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)). Thus, even if *City of Oakland's* reliance on *Cort* was not entirely misplaced (as the Third Circuit suggested in *McGovern v. City of Philadelphia*, 554 F.3d 114, 118–19 (3d Cir.2009)), the analysis may still be at its end if the text of the statute, which evidences Congressional intent, is unambiguous. *See Sandoval*, 532 U.S. at 288, 121 S.Ct. 1511.

Section 1981(c) is explicit about rights but silent on remedies; it "places an individual's rights on equal footing against discrimination by private and public actors," but fails do the same for remedies. *McGovern*, 554 F.3d at 119. The Ninth Circuit overcomes this omission by observing that subsection (c) codified *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), which held that § 1981 prohibits discrimination in both private and public contracting. The Court leaps from this otherwise uncontroversial assertion, *see e.g., McGovern*, 554 F.3d at 120; *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir.2000), to conclude that Congress's approval of equating rights against private and public defendants necessarily manifests the intention to create a remedy against the latter because an earlier Supreme Court decision had already held that it existed against the former.

I respectfully disagree. It is difficult to accept that Congress intended to overturn a Supreme Court decision handed down less than two years earlier, bestow § 1981 with its own cause of action against state actors—when one had already existed in § 1983—all without a mention in the statute. Moreover, as the Court in *City of Oakland* appears to concede, the legisla-

tive history reveals no intention to overturn *Jett*. 96 F.3d at 1213; *see also McGovern*, 554 F.3d at 120 (observing that nothing in the legislative history "even mentioned" *Jett*); *Bolden*, 441 F.3d 1129, 1137 (10th Cir.2006) ("[O]nly one who never relies on committee reports would fail to be impressed by the total absence in the committee reports of any mention of *Jett* ...."). Like the Circuit Courts that have found *Jett* still intact, I expect a lot more from a statute that is purported to overturn Supreme Court precedent and create a cause of action. *See Bolden*, 441 F.3d at 1137 ("Congress does not overrule recent Supreme Court precedent so subtly."); *cf. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir.2007) (per curiam) (holding that when the statute makes no explicit provision for a private cause of action, a presumption attaches that Congress did not intend one).

Thus, Ortiz' § 1981 claim fails. To maintain his action, Ortiz would have to amend his complaint.

### III. Whether amending the complaint to bring a § 1983 claim would be futile?

Ortiz rests his entire opposition on the claim that § 1981 contains a private cause of action against state actors—an argument that this Court has rejected. In the interest of judicial economy, because the Court raised the issue at the hearing and the City has fully briefed it, the Court will address whether dismissal of the complaint is warranted if it is amended to bring a § 1983 action. *Cf. T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10–2843, 2010 WL 3310262, *4, 2010 U.S. Dist. LEXIS 85244, *11–12 (E.D.N.Y. Aug. 19, 2010) (exercising discretion to consider new arguments raised on reply because the other party suffers no unfair prejudice)

Although leave to amend is granted "freely ... when justice so requires," Fed.R.Civ.P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), it is denied if the amendment would be futile because it fails as a matter of law. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir.2000) (quoting *Foman*, 371 U.S. at 182, 83 S.Ct. 227). Leave to amend the instant complaint would be granted; Ortiz states a plausible claim and he brings it within the four-year statute of limitation.

### A. Whether Ortiz's complaint fails to state a plausible § 1981 claim

The City argues that Ortiz's allegations do not give rise to a plausible claim for discrimination because: (1) even timely action by the precinct acting on Ortiz' reinstatement application would have resulted in a loss of seniority, and (2) reinstatement is not guaranteed but is within the discretion of the head of the agency.

On a motion to dismiss, these arguments must fail. Crediting Ortiz's allegation that similarly situated white officers were reinstated with their prior seniority, Ortiz states a plausible § 1981 claim. He is entitled to the inference that the agency's discretion is consistently exercised in a discriminatory manner so that white officers' applications for reinstatement are reached sooner—*i.e.*, in less than two months.[3]

### B. Whether Ortiz' § 1981 claim is timely

Deciding the proper statute of limitations turns on (1) the classification of the § 1981 claim (2) the interpretation of 28 U.S.C. § 1658(a).

### 1. Classifying the § 1981 claim

In New York, § 1983 and § 1981 actions have traditionally carried a three-year statute of limitations. *See Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir.2004). Title 28 U.S.C. § 1658(a), however, provides a catch-all four-year statute of limitations for civil actions that arise under Acts that were passed after December 1, 1990. The Court must therefore decide whether Ortiz' claim arises under a post–1990 enactment and if so, whether the four-year limitation is appropriate where the vehicle for the action has a different time bar.

As previously mentioned, the Civil Rights Act of 1991 added two subsections to § 1981. Section 1981(b) now defines contractual formation and enforcement, protected by subsection (a), to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Congress passed this provision to invalidate *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which held that § 1981 did not protect against discriminatory conduct that occurred after a contract is formed. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372–73, 124 S.Ct. 1836, 158 L.Ed.2d 645 (U.S.2004).

Title 28 U.S.C. § 1658(a) states that, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after ... [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." In *Jones*, the Court clarified the meaning of § 1658(a)'s phrase, "arising under." It

---

**3.** With his opposition brief, Ortiz includes a response letter he received from the NYPD, outlining the reinstatement process. The City argues on reply that the letter is improperly submitted on a motion to dismiss. Because the Court finds that the allegations in the complaint alone are sufficient to state a plausible claim, it does not address this argument.

recognized the ambiguity in applying § 1658(a) to an action for wrongful termination, refusal to discharge, and hostile work environment—claims that rely on the amendment to § 1981 but do not arise out of a "wholly new cause of action." *Id.* at 374, 124 S.Ct. 1836 (quoting *Jones,* 305 F.3d 717 (7th Cir.2002)). The Court nonetheless elected a broad interpretation, holding that any action that was made possible by a post–1990 enactment carries a four-year statute of limitations.

Ortiz argues that discrimination in the reinstatement process is prohibited by § 1981 because of the added subsection. The City disputes that § 1981 applies at all, claiming that any rights Ortiz had in his reinstatement stem from the "Personnel Rules and Regulations of the City of New York," rather than from any contract. Therefore, Ortiz' complaint, the argument goes, would not in any part be dependent on § 1981(b) and should not benefit from the longer statute of limitation. I disagree. The complaint essentially alleges that these terms, whether arising from regulation or agreement, were part of the contract. On a motion to dismiss, the Court must assume that the regulations were incorporated into Ortiz' contract. Thus, § 1981 applies.

Ortiz' § 1981 claim is "made possible" by the addition of subsection (b) to the statute. *Id.* at 382, 124 S.Ct. 1836. As previously explained, the critical question following *Jones* for determining the applicability of § 1658(a) is whether a § 1981 claim for discrimination was viable under the old *Patterson* regime. Under *Patterson,* claims failed if they alleged discrimination that occurred after the formation of a contract and did not involve interference with enforcement of established contractual obligations. Enforcement of those obligations was defined narrowly by *Patterson* to exclude from § 1981's reach anything

beyond an obstruction of an "employee's ability to enforce through legal process his or her established contract rights." 491 U.S. at 177–78, 109 S.Ct. 2363.

The City appears to concede that Ortiz' reinstatement was post-formation conduct, not actionable without § 1981(b). *See e.g., Rick Nolan's Auto Body Shop, Inc. v. Allstate Ins. Co.,* 718 F.Supp. 721, 722 (N.D.Ill.1989) (dismissing a § 1981 action for discrimination in the reinstatement of a contract). It instead argues that the complaint fails to state a plausible § 1981 claim, which is an argument that the Court has rejected. Thus, Ortiz' § 1981 claim is plausible, it is "made possible" by § 1981(b), and can therefore potentially benefit from § 1658(a)'s four-year statute of limitation.

### 2. Whether Ortiz can escape § 1983's three-year limitation

█ Generally, § 1983 actions in New York must be instituted within three years. *See Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002). The City urges the Court to apply this limitation here because § 1983 is the remedial vehicle; employing a different time-bar, the City argues, would ignore the rights-remedies dichotomy. Ortiz maintains that a four-year limitation governs this action. I must therefore decide whether § 1983 actions asserting § 1981 claims are subject to § 1983's three-year statute of limitations in New York or whether § 1658(a)'s four-year bar would still apply.

There is no binding precedent and the relevant persuasive authority is sparse. In an unreported opinion, the Second Circuit affirmed the dismissal of a § 1983 action that brought, *inter alia,* § 1981 claims, and was filed some 14 years after the alleged discriminatory action of a state actor. *Harmon v. Patrolman's Benevolent Ass'n,* 199 Fed.Appx. 46 (2d Cir.2006). The Court observed, without explaining,

that "[s]ince the applicable statute of limitations on Section 1983 claims is 3 years (*or 4 years, if the claims are set forth under 28 U.S.C. § 1658(a)),* they were all time barred." *Id.* at 48 (emphasis added).

District courts in the Circuit have shed little light on the issue. *See Hardy v. Town of Greenwich,* No. 06–cv–833, 2008 WL 5117370, at *9, 2008 U.S. Dist. LEXIS 98333, at *28 (D.Conn. Dec. 3, 2008) (noting the ambiguity but declining to resolve it because the parties stipulated that the complaint was filed within three years). Some courts have simply remarked that § 1981 claims, even when pressed against state actors, have a four-year bar. *See e.g., Russell v. County of Nassau,* 696 F.Supp.2d 213, 230 (E.D.N.Y.2010); *McCray v. City of New York,* No. 03–cv–9685, 2007 WL 4352748, at *13, 2007 U.S. Dist. LEXIS 90875, at *51–52 (S.D.N.Y. Dec. 11, 2007); *Richards v. City of New York,* No. 05–cv–1163, 2007 WL 1030294, at *9, 2007 U.S. Dist. LEXIS 23726, at *30 (E.D.N.Y. Mar. 30, 2007); *Copeland v. N.Y. City Bd. of Educ.,* No. 03–cv–9978, 2005 WL 3018267, at *3–4, 2005 U.S. Dist. LEXIS 28655, at *12–13 (S.D.N.Y. Nov. 8, 2005). Much in the same way, other courts have noted in passing that the three-year limitation applies. *See e.g., Boyer v. Syosset Cent. School Dist.,* 07–CV–3520, 2008 WL 1766603, at *5 n. 1 (E.D.N.Y. Apr. 14, 2008).

The Eleventh Circuit, which does not recognize a private cause of action in § 1981 against state actors, has recently undertaken the analysis, concluding that a § 1983 action stating § 1981 claims that were enabled by subsection (b) is governed by the four-year limitation period. *See Baker v. Birmingham Bd. of Educ.,* 531 F.3d 1336 (11th Cir.2008); *see also Knox v. City of Monroe,* 551 F.Supp.2d 504, 511–12 (W.D.La.2008). The Court based its holding on the language of two Supreme Court

decisions. First, it observed that in *Jones,* the Court interpreted § 1658(a) broadly. As the Eleventh Circuit explains, the Court "expressly rejected an interpretation as narrow … under which 'arising under' means something akin to 'based solely upon,' " adopting instead the "made possible" definition of the phrase. *Id.* at 1339 (quotation marks and citation omitted). Section 1658(a) should therefore apply to the action before it, the Eleventh Circuit reasoned, because it too was made possible by the amendment to § 1981.

The Court also relied on dicta from a recent Supreme Court decision, *City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005). In *Abrams,* the Court was called upon to decide whether § 1983 is available to enforce the Telecommunications Act (TCA), which had its own private cause of action but did not provide for monetary relief or attorneys' fees. The Court held § 1983 unsuitable to enforce the TCA, finding that Congress did not intend TCA's remedy to coexist with a separate cause of action under § 1983. But because the Court initially concluded that a federal statute's private cause of action does not per se foreclose recovery under § 1983, it engaged in a comparison of TCA's cause of action and § 1983, holding that the former was intentionally designed to be more restrictive than the latter.

Relevant to the issue at bar, the Court observed that TCA's 30 day statute of limitation

> was shorter than the limitation that would apply in a § 1983 action: The statute of limitations for a § 1983 claim is generally the applicable state-law period for personal-injury torts. On this basis, the applicable limitations period for respondent's § 1983 action would presumably be one year. It may be, however, that this limitations period

does not apply to respondent's § 1983 claim. In 1990, Congress enacted 28 U.S.C. § 1658(a), which provides a 4-year, catchall limitations period applicable to "civil action[s] arising under an Act of Congress enacted after" December 1, 1990. In [*Jones*] we held that this 4-year limitations period applies to all claims "made possible by a post–1990 [congressional] enactment." Since the claim here rests upon violation of the post–1990 TCA, § 1658 would seem to apply.

*Id.* at 124 n. 5, 125 S.Ct. 1453 (citations omitted).

*Abrams'* significance for the present question, however, does not end with the footnote. The respondent in *Abrams* disputed the parameters of a potential § 1983 action to enforce the TCA, arguing that the action would not be governed by a state's statute of limitations for personal-injury torts that would normally attach; the TCA, he claimed, is a federal statute that carries its own limitation, displacing the one provided by the state. The Court summarily dismissed this contention:

> [*Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)] expressly rejected the proposition that the limitations period for a § 1983 claim depends on the nature of the underlying right being asserted. We concluded instead that 42 U.S.C. § 1988 is a directive to select in each State, the one more appropriate statute of limitation for *all* § 1983 claims. We acknowledged that a few § 1983 claims are based on statutory rights, but carved out no exception for them.

*Id.* at 124–25, 125 S.Ct. 1453 (emphasis in original, citations and quotation marks omitted).

Nor was the Court persuaded that § 1658(a) would necessarily be inapplicable. The 30 day time-bar provided by the TCA and § 1658(a)'s prefatory clause, "[e]xcept as otherwise provided by law," which qualifies the four-year catch-all limitation, are inapposite, the Court held. It explained that the TCA's statute of limitation "is inextricably linked to—indeed, is embedded within—the language that creates the right of action. It cannot possibly be regarded as a statute of limitations generally applicable to *any* action to enforce the rights created by [TCA]." *Id.* at 125, 125 S.Ct. 1453. In other words, assuming that § 1983 could be used to enforce the TCA, the statute of limitations for that action would not be 30 days because that time bar is exclusively tied to the TCA's own cause of action.

I agree with the Eleventh Circuit that the four-year catch-all statute of limitation applies to a § 1983 action claiming a violation of rights that are protected by a post–1990 enactment. Unlike the Court in *Baker,* however, I do not find *Abrams* to militate in favor of this conclusion. The relevant language in *Abrams* is not only dicta but is equivocal; the Supreme Court did not have to decide whether the three or four year statute of limitations applies (both were longer than the 30 days provided by the TCA), and it defended the application of both limitations. One can just as easily take out of context the Court's observation that a § 1983 action does not depend on the federal statute that is enforced, which would suggest that § 1983 is always subject to the state's statute of limitations.

Instead, I begin the analysis with the language of the § 1658(a), quoted above. In *Abrams,* the Court found inapplicable the prefatory clause that serves as an escape hatch for § 1658(a) because the TCA's statute of limitations is "inextricably linked" to the TCA's own cause of action. Conversely, § 1981 is not linked to *any* statute of limitations other than the

states' limitation periods for personal injury actions, which the Supreme Court held govern § 1981 claims. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Of course, these limitation periods are not the "laws provided" within the meaning of § 1658(a)'s exception; it was the borrowing of state statutes of limitations that "led both courts and commentators to call upon Congress" to enact § 1658(a). *Jones,* 541 U.S. at 379–80, 124 S.Ct. 1836 (citation and quotation marks omitted). The prefatory clause therefore does not apply.

Like in *Jones,* the analysis here turns on the meaning of "arising under." In *Jones,* the Court conceded that under one plausible interpretation of the phrase, the action could be said to have arisen under two Acts: the Civil Rights Act of 1866, which enacted § 1981(a) and provided the cause of action, and the Civil Rights Act of 1991, which added § 1981(b) and expanded the scope of § 1981(a). By choosing the "made possible by" definition, the Court opted for the interpretation of the phrase that filled "more rather than less of the void" that had been left by Congress. *Id.* at 380, 124 S.Ct. 1836. The Court therefore described the action as arising under § 1981(b).

The dynamic is slightly different here. The cause of action, § 1983, was enacted by the Civil Rights Act of 1871, and the § 1658(a)-qualifying Civil Rights Act of 1991 did not amend it. Thus, while the action in *Jones* could be said to "originate" or "spring up" from the amendment that expanded the underlying cause of action, it takes a broader leap to conclude the same in a suit that springs up from a cause of action that the amendment did not disturb. *Id.* at 382, 124 S.Ct. 1836.

Nonetheless, I find *Jones'* definition of "arising under" controlling, and consequently, § 1658(a) applicable to this action. In deciding that the action did not arise under § 1981(b), the Seventh Circuit in *Jones* found it significant that the provision "simply cannot stand on its own . . . . [to recover] for discriminatory post-formation treatment. . . ." 305 F.3d at 727. The same is true in the present action— § 1981(b) is a necessary component, but not the vehicle for the action. The Supreme Court, however, was *not moved by* this difficulty; so long as "the plaintiff's claim against the defendant was *made possible* by a post–1990 enactment," the civil action is governed by the 4 year limitation. 541 U.S. at 383, 124 S.Ct. 1836 (emphasis added). Facing clear directive from the Supreme Court, I must characterize the cause of action as one that arises under § 1981(b), even if it results in a statute of limitation oddly springing (indirectly) from the right rather than from the remedial vehicle. *Cf. Kaiser v. Cahn,* 510 F.2d 282, 286 (2d Cir.1974) (determining whether to toll a statute of limitation under federal common law rather than state law because "in Civil Rights Act cases, the statute of limitations goes to the remedy and not the creation of the right"). Ortiz' § 1983 action is therefore timely.[4]

---

**4.** At the hearing, the Court raised the possibility that the action against the City, even if timely, could fail to state a *Monell* claim if the underlying constitutional violation would be time-barred. *See e.g., Jennis v. Rood,* 310 Fed.Appx. 439, 440–41 (2d Cir.2009); *but see Prue v. City of Syracuse,* 26 F.3d 14, 19 (2d Cir.1994); *Sforza v. City of New York,* 07 Civ. 6122, 2009 WL 857496, at *10, 2009 U.S. Dist. LEXIS 27358, at *30 (S.D.N.Y. Mar. 31, 2009). The City now raises the argument in its brief. Fortunately, this is one question the Court need not address. The Second Circuit has held that as long as there is some link to connect the actor with the discriminatory action, § 1981 provides for personal liability. *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 76 (2d Cir.2000). Ortiz would therefore not be limited to a § 1983 claim in bringing a potential action for the underlying

## CONCLUSION

For the reasons set forth above, defendant's [12] motion to dismiss is denied, and the complaint is deemed amended to state a § 1983 action that asserts a § 1981 claim.

**SO ORDERED.**

constitutional violation alleged in the complaint; his claim would not be time-barred for the reasons set forth above; and his *Monell* claim remains viable.