NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3216

_____

DOUG COOK; JODY EBERHART; BARBARA SWILLEY; MATTHEW DOVNER;
CODY MAYFIELD,
Appellants

v.

GENERAL NUTRITION CORPORATION

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-17-cv-00135)
District Judge: Honorable Nora B. Fischer

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 2, 2018

_____

Before: SMITH, *Chief Judge*, HARDIMAN, and RESTREPO, *Circuit Judges*.

(Opinion Filed:  September 17, 2018)

_____

OPINION*

_____

RESTREPO, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Appellants appeal an order of the District Court dismissing their suit against General Nutrition Corporation ("GNC") for breach of contract, unjust enrichment, and breach of Florida and California consumer protection laws. For the reasons that follow, we will affirm.

**I**

As we write solely for the benefit of the parties, we set out only the facts necessary for the discussion that follows. GNC, one of the world's largest specialty retailers of health, wellness and performance products, launched its membership program, known as the Gold Card Program, in 1991. To join, GNC customers paid a $15 annual membership fee and in return received benefits at GNC stores, including up to 50% off purchases, for one or two years from the date of payment. By October 2016, GNC knew that it would terminate the Gold Card Program by the end of that year, but did not disclose its plans to customers and continued to sell memberships until December 18, 2016. On December 28, 2016, GNC officially terminated the Gold Card Program. Despite possessing more than $24 million in deferred revenue from the sale of Gold Card memberships, GNC refused to honor the benefits that Gold Card members had purchased or to refund the membership fees.

The Gold Card Program Terms and Conditions ("T&Cs"), as well as terms on the physical Gold Card, governed the Gold Card Program. The T&Cs expressly provided that GNC could alter or terminate membership benefits or conditions at any time, with or without notice, and that the membership fee would not be refunded. The T&Cs also contained a choice-of-law provision:

> Any claim relating to the Program, our Terms, and the relationship between you and us shall be governed by the laws of the United States and the Commonwealth of Pennsylvania without regard to its conflict of law provisions. You and GNC agree to submit to the personal and exclusive jurisdiction of the courts located within the Commonwealth of Pennsylvania.

App. 95.

GNC replaced the Gold Card Program with a new membership program called myGNC Rewards, which was free to join and allowed members to accumulate points based on purchases. The myGNC Rewards Terms and Conditions contained an arbitration clause.

Five Plaintiff-Appellants, citizens of Georgia, Pennsylvania, Florida, and California, all of whom were Gold Card members and one of whom, Barbara Swilley, was also myGNC Rewards member, filed a class action suit against GNC alleging breach of contract, unjust enrichment, and breach of Florida and California consumer protection laws. The named individual Plaintiffs filed suit on behalf of a nationwide class comprised of all Gold Card members in the United States with membership expirations subsequent to December 31, 2016, as well as Florida and California subclasses for the members in those states. GNC moved to dismiss the Amended Complaint and to compel arbitration of Swilley's claim. The District Court granted both motions and stayed the proceedings with respect to Swilley's claim. Swilley filed a motion for reconsideration on the motion to compel, which the District Court denied. This timely appeal followed.

3

**II**[1]

We exercise plenary review over a district court's dismissal of claims pursuant to Rule 12(b)(6). *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009). "The District Court's judgment is proper only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint." *Id*.

**III**

Appellants make four arguments on appeal. We will address each in turn.

Appellants first argue that the District Court erred when it concluded that the T&Cs were an enforceable contract that precluded Appellants' unjust enrichment claim under Pennsylvania law. We disagree. An unjust enrichment claim is "inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Schott v. Westinghouse Elec. Corp.,* 436 Pa. 279, 290 (1969)). The T&Cs constitute such a contract, the provisions of which are express, clear and unambiguous. Accordingly, an unjust enrichment claim is unavailable to Appellants here and the District Court did not err in dismissing such a claim on that basis.

In the alternative, Appellants argue that the T&Cs constituted an enforceable contract, which GNC breached by terminating the Gold Card Program without providing full membership benefits or refunds of membership fees. Although we agree that the

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(d), and we have appellate jurisdiction under 28 U.S.C. § 1291.

terms constitute an enforceable contract, we must disagree with the latter contention. Under Pennsylvania law, a breach of contract claim has three elements: (1) a contract and its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages. *Kaymark v. Bank of Am.*, 783 F.3d 168, 182 (3d Cir. 2015). "Before concluding that there is a valid contract . . . the court must 'look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration.'" *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (quoting *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998)).

A valid contract was formed when the Appellants paid GNC to join the program and signed the accompanying T&Cs, which expressly permit GNC to unilaterally modify or cancel the agreement at any time, with or without notice. Accordingly, GNC's decision to terminate, while unfortunate, is permissible by the terms of the contract. There is, therefore, no breach and the District Court properly dismissed the claim.

Next, Appellants argue that the District Court improperly applied Pennsylvania law when it chose to honor the T&Cs' forum selection clause. Specifically, while conceding that the T&Cs contained a choice-of-law provision designating Pennsylvania law, Appellants assert that the District Court erred in finding Pennsylvania had a substantial relationship to the Florida and California subclasses. This argument fails. When a district court's jurisdiction rests on the diversity of the parties, the district court must apply the choice of law rules of the forum state. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d. Cir. 2017). Under Pennsylvania law, "courts generally honor the intent of

5

the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool*, 40 F.3d 52, 55 (3d Cir. 1994). Pennsylvania courts have adopted section 187 of the Restatement (Second) Conflict of Laws, which honors choice-of-law provisions "unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007).

Neither of those conditions is present here. Not only is Pennsylvania the choice of law designated in the contract, but GNC is a Pennsylvania corporation with its principal place of business in Pennsylvania. This qualifies as a substantial relationship. *See Kruzits*, 40 F.3d at 56. Nor have Appellants shown that either Florida or California has a materially greater interest in the issues of this case than Pennsylvania that would overcome the presumption in favor of Pennsylvania law.

Finally, Appellant Swilley argues that the District Court erred by granting GNC's motion to compel arbitration of her claim. However, we are unable to consider this argument as the Federal Arbitration Act (FAA) limits appellate review to final orders. 9 U.S.C. § 16(a)(3). Where a district court orders parties to resolve their dispute by arbitration and dismisses the case, the arbitration order is final and immediately appealable. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86–89 (2000). On the other hand, where, as here, a district court orders the parties to arbitration, but chooses to stay

6

the proceedings, the FAA specifies that an immediate appeal is not available. *Id*. at 87 n. 2 ("Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable."). Because there is no appealable order, we have no jurisdiction to address whether the District Court erred in finding this controversy arbitrable.

**IV**

For the foregoing reasons, we will affirm the judgment of the District Court.