CLD-351                                                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2107
_____

JON BAUMGARDNER,
                              Appellant

v.

DAVID J. EBBERT, Warden, FMC; MR. RILEY, Health Service Officer;
MR. LAINO, Health Service Administrator; DEBRA SPOTTS, Former Assistant Health
Service Administrator;  MR. SIMONSON, Medical Officer; JAY MILLER,
Medical Officer; DAVID J. BALL, Contracted Surgeon; MICKI POWAND,
Physicians Assistant; BOP Officer JOHN DOE; BOP Officer RICHARD ROE;
FEDERAL BUREAU OF PRISONS and various additional unknown
agents and employees of the Federal Bureau of Prisons
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 4:10-cv-01459)
District Judge: Honorable William J. Nealon, Junior
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 25, 2013

Before: RENDELL, JORDAN and SHWARTZ, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 12, 2013)
_____

OPINION
_____

PER CURIAM

Appellant Jon Baumgardner appeals the District Court's order granting defendants' motions to dismiss and motion for summary judgment. For the reasons set forth below, will summarily affirm the District Court's judgment. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

I.

Because we primarily write for the parties, we will recite only the facts necessary for our discussion. Baumgardner is an inmate currently confined in the Federal Correctional Institution, Allenwood, Pennsylvania ("FCI-Allenwood"). He filed this Bivens action against various FCI-Allenwood medical health service and staff employees (the "BOP Defendants"), as well Dr. David J. Ball, a private orthopedic surgeon, alleging mistreatment and deliberate indifference, inter alia, in connection with the treatment of his ruptured Achilles tendon, which he injured in June 2008 while playing basketball in the outside recreation yard. After the incident, Baumgardner was immediately taken to the medical department and treated by a nurse, who wrapped his foot, gave him crutches, and instructed him to elevate his foot and apply ice. The next day, an x-ray was taken and an orthopedic consult for surgery was ordered. Three days after the incident, Dr. Ball repaired Baumgardner's Achilles tendon. Thereafter, Baumgardner saw various medical professionals in connection with his injury.

2

In August 2008, Baumgardner was seen by a physician assistant at FCI-Allenwood. He complained of a burning sensation and numbness in his foot and heel and he asked for direction relating to rehabilitation. After conferring with Dr. Ball, the physician assistant educated Baumgardner on stretching exercises. According to Dr. Ball, at that time, Baumgardner was approximately eight weeks out from surgery and he was free to resume all normal activities. About ten days later, Baumgardner saw Dr. Ball and was treated for heel pain. He expressed concern about physical therapy. Dr. Ball's medical notes state: "He did relate some disapproval of the fact that he did not get any physical therapy after his surgery. . . I showed him how to do stretching by going up a step. I also told him he could use weights and a stationary bicycle for his stretching and strengthening." See Exhibit 2, Att. 2 to Defendants' motion to dismiss and for summary judgment at 37-38. Dr. Ball further noted that other than some mild swelling, Baumgardner "otherwise had an excellent result with his Achilles tendon repair." Id. Again in September 2008, Baumgardner saw Dr. Ball, who recommended certain stretching exercises and encouraged him to use the stationary bike to increase his range of motion and strength.

Thereafter, there are numerous entries in Baumgardner's medical records showing that he was treated for pain related to his Achilles injury, including treatment for hip pain, back pain, heel pain, and a wound at the incision site. See Exhibit 2, Att. 2 to Defendants' motion to dismiss and for summary judgment. In November 2008,

Baumgardner had an x-ray of his hip, which was negative. In December 2008, Baumgardner was examined for his continuing right hip and back pain and an MRI was ordered. The MRI was completed in February 2009 and showed "some slight bilateral hip joint degenerative change," but no fractures or bony destructive lesions. Id. at p. 61. In March 2009, Baumgardner received a lumbar x-ray, which was negative. As a result of continuous back pain, Baumgardner received another MRI in June 2009, which did not show anything. From September 2009 through July 2010, Baumgardner was seen by medical staff at FCI-Allenwood for hip and back pain. He received pain medication and heel pads for his shoes.

In July 2010, Baumgardner initiated this action. He claims that the defendants knew of his condition, but failed to timely provide treatment. He alleges that the medical staff was not properly trained, experienced, licensed, or qualified for their positions. Baumgardner alleges intentional mistreatment in violation of his rights under the Fifth Amendment, cruel and unusual punishment and deliberate indifference to his medical condition in violation of his rights under the Eighth Amendment, and retaliation by withholding privileges from inmates who complain in violation his rights under the First Amendment. He also brought claims pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et. seq. ("FTCA"), the Americans With Disabilities Act, 42 U.S.C. § 12132 ("ADA") and various state law claims. Baumgardner submitted two affidavits outlining the facts surrounding his claims. He claims that he was denied physical therapy, despite

4

numerous requests and filing a grievance. He alleges that other inmates who have had Achilles tendon surgery performed by Dr. Ball have had physical therapy and have returned to normal physical activity. The BOP Defendants filed a motion to dismiss and motion for summary judgment, and Dr. Ball filed a motion to dismiss and a motion to dismiss for failure to file a certificate of merit, all of which the District Court granted. This appeal followed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review of a district court's order granting or denying summary judgment, applying the same standard as the district court. See Tri–M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011). We will affirm only if "drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Id. We also exercise plenary review over the District Court's dismissal order. See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). We will affirm a district court's dismissal for failure to state a claim "only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we

5

determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint." McGovern v. City of Philadelphia, 554 F.3d 114, 115 (3d Cir. 2009). We may summarily affirm if the appeal does not present a substantial question, and may do so on any basis supported by the record. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

III.

Baumgardner claims that the defendants violated his rights under the Eighth Amendment. However, there is nothing in the record to support such a claim. In the context of Eighth Amendment claims based on medical care, a plaintiff must demonstrate deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). For instance, a plaintiff may make this showing by establishing that the defendants "intentionally den[ied] or delay[ed] medical care." Id. (quotation marks omitted). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotation marks omitted).

Baumgardner claims that the defendants violated his Eight Amendment rights by

6

not providing him with post-operative physical therapy. He claims that inmates who had similar surgery received physical therapy and did not experience the pain he experienced. Even if these allegations are true, Baumgardner fails to adduce any evidence that the defendants had a sufficiently "culpable state of mind" when they treated him and, thus, he fails to state a claim for deliberate indifference. See Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 193 (3d Cir. 2001) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999) ("In the context of a deliberate indifference claim based on failure to provide adequate medical treatment, '[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"). Viewing the facts and all reasonable inferences in favor of Baumgardner, the record shows that he was provided pain medication and treatment after his injury and there is nothing in the record to suggest that Baumgardner was intentionally denied treatment in order to inflict pain.

Moreover, a prisoner's disagreement with proper medical treatment does not imply a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Here, Baumgardner argues that he should have been treated by a professional physical therapist. The record shows, however, that Dr. Ball provided Baumgardner with stretches and exercises to perform to help his recovery. The fact that these exercises were not prescribed by a physical therapist is irrelevant. The record evidence shows that Baumgardner was treated for his injury and there is no evidence from which we can draw

a reasonable inference that the defendants consciously disregarded Baumgardner's medical needs and delayed his treatment. Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."); Kaucher v. County of Bucks, 455 F.3d 418, 428 (3d Cir. 2006) (requiring "that a person consciously disregard 'a substantial risk of serious harm'").[1]

The record also does not support Baumgardner's retaliation claim. A prisoner litigating a retaliation claim must show that the conduct provoking the alleged retaliation was constitutionally protected, that he suffered some "adverse action" at the hands of the prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights," and that the constitutionally protected conduct was a substantial motivating factor in Defendants' conduct. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted). Here, Baumgardner alleges that the defendants withheld physical therapy as punishment and as a means to discourage complaints about inadequate medical treatment. However, these allegations are vague, nonspecific statements that cannot withstand a motion to dismiss and there is

---

[1] We agree with the District Court that the non-medical defendants were entitled to summary judgment for Baumgardner's Eighth Amendment claim. Correctional officials cannot be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by a prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); see also Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (non-medical prison officials will not be charged with deliberate indifference absent a reason to believe or actual knowledge that medical staff are mistreating a prisoner).

no evidence in record to create an issue of material fact to preclude summary judgment.[2],[3]

IV.

We agree with the District Court's decision to dismiss Baumgardner's FTCA claim for medical negligence because he failed to file a certificate of merit ("COM"). The FTCA requires a court to apply the tort laws of the state in which the alleged tort arose. Gould Elec. Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000). Here, the alleged tort of medical malpractice occurred in Pennsylvania and Pennsylvania's law applies. Pennsylvania law requires a plaintiff alleging medical malpractice to file a COM.[4] The certificate must attest either that an appropriate licensed professional supplied a written statement that there exists a reasonable probability that the care provided fell outside acceptable professional standards, or that expert testimony of an appropriate licensed professional is unnecessary. Pa. R. Civ. P. 1042.3(a)(1) & (3). This requirement is a substantive rule and applies even where, as here, the claim is brought in federal court. See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264–65 (3d Cir. 2011).

Baumgardner did not file the required COM, nor did he make a substantial effort

---

[2] Having had two opportunities to amend his complaint, we agree with the District Court that allowing Baumgardner to amend for a third time would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

[3] Similarly, Baumgardner has no valid cause of action under the Fifth Amendment.

[4] To the extent Baumgardner alleges that his claims are for ordinary negligence, rather than medical malpractice, we agree with the District Court that Baumgardner's claim that his medical care providers failed to order some type of physical therapy is a claim for medical malpractice, requiring a certificate of merit.

to comply with the rule or provide a reasonable excuse for failing to do so.[5]  Accordingly, the District Court properly dismissed his FTCA malpractice claim.[6],[7]

V.

For the foregoing reasons, no substantial question is presented and we will affirm the judgment of the District Court.  <u>See</u> 3d Cir. L.A.R 27.4; I.O.P. 10.6.[8]

---

[5] We agree with the District Court that Baumgardner's argument that requiring a COM at this stage of the litigation presents a great burden because prisoners do not have access to their medical records and files prior to discovery is not a sufficient excuse for failing to file a COM.

[6] Baumgardner's reliance upon <u>Berman v. United States</u>, 205 F.Supp.2d 362 (M.D. Pa. 2002) to support his claim for medical negligence is misplaced, as the docket shows that the plaintiff in that case had an expert witness and, the issue of a COM did not arise.

[7] We agree with the District Court that Baumdgardner's remaining claims for violation of the ADA, intentional infliction of emotional distress, negligent infliction of emotional distress, and non-medical negligence claims, fail to state a cause of action.  The District Court also properly dismissed the unnamed defendants, John Doe and Richard Roe, for failure to serve.  <u>See</u> Fed.R.Civ.P. Rule 4(m).

[8] In support of his appeal, Baumgardner argues that he has been proceeding without the benefit of discovery.  He argues that the defendants' motions were filed before the Court held a Rule 26 conference and, thus, discovery was not open.  Notably, Baumgardner did not request a stay of decision on the summary judgment motion in order to seek discovery, nor did he serve any discovery requests or file any discovery related motions.  While Federal Rule of Civil Procedure 26(d) provides that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," Rule 26(f) states that "the parties must, *as soon as practicable* and in any event *at least* 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b), confer to . . . develop a proposed discovery plan . . . ."  (emphasis added). Thus, Rule 26(f) does not require the parties to delay conferring until after a scheduling conference has been held or a scheduling order has been issued and Baumgardner was not precluded from conferring with his adversaries as required by Rule 26(f) to initiate the discovery process.