**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4282
_____

LARRY THOMAS,
                    Appellant

v.

CITY OF PHILADELPHIA
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-12-cv-03250)
District Judge: Hon. Berle M. Schiller
_____

Submitted Under Third Circuit LAR 34.1(a)
July 8, 2014
_____

Before: SMITH, VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: July 15, 2014)
_____

OPINION
_____

SHWARTZ, Circuit Judge.

Larry Thomas filed suit against the City of Philadelphia (the "City"), his former

employer, claiming that he was the victim of racial discrimination. The District Court

granted summary judgment in favor of the City. We will affirm.

# I

Larry Thomas, an African-American, was employed by the Philadelphia Water Department ("PWD") for nearly twelve years before his retirement on June 10, 2010. When he retired, Thomas was a Water Distribution Repair Worker in the "Shut-Off Unit," which required that he visit customers who had not paid their water bills and either collect their payments or shut off their water service. App. 69. After he finished visiting the delinquent customers, Thomas was on call to restore water service to customers who paid their bills. Thomas often waited for these restoration calls in his City-owned car parked in front of his home, which he believed his supervisor authorized.

On April 9, 2010, the City's Office of the Inspector General, which investigates allegations of employee misconduct, received a confidential complaint that Thomas

> comes home during the day in his PWD [C]ity vehicle and parks on his block and leaves it running for several hours. Thomas does personal errands, including going to the supermarket and picking up junk from the street and taking it to the salvage yard in his personal vehicle, while his [C]ity vehicle is parked on his block running for several hours at a time.

App. 156. The complaint specifically listed incidents on April 5, 2010, when Thomas left his car running for four hours, and April 6, 2010, when he left the car running for two hours while he was elsewhere. The Office of the Inspector General forwarded the complaint to the PWD human resources department, where Human Resources Manager Francis X. Meiers forwarded it to Ivor Griffiths, a Human Resources associate. Griffiths investigated the complaint by driving to Thomas's home where, on May 27, 2010, he and a co-worker observed Thomas sitting in his City-owned vehicle for thirty minutes to an hour. Griffiths contacted Thomas's supervisor, Ralph Allen, who in turn called Thomas

2

and asked where he was. Thomas falsely told Allen he was in a neighborhood other than his own. Allen then summoned Thomas back to his union headquarters and suspended him pending a pre-disciplinary hearing.

On May 28, 2010, PWD sent Thomas a notice that a pre-disciplinary hearing would be scheduled to investigate the allegations that Thomas was at home when he was supposed to be working, and warned that "severe disciplinary action" could be taken. App. 208. The letter also explained that Thomas had the right to the assistance of a union representative during the hearing and would be entitled to appeal any discipline in excess of a ten-day suspension to the Civil Service Commission. On June 9, 2010, Thomas received notice that the hearing had been scheduled for the following morning and that his union representative would be present. Griffiths was to conduct the hearing and Meiers was to act as the hearing officer. As the hearing officer, Meiers was to hear the evidence and make a recommendation to the PWD commissioner concerning what, if any, disciplinary action to take. Before the hearing began, Meiers and Griffiths spoke with Jeff Gilliam, Thomas's union representative. Thomas was not provided a copy of the complaint, but Meiers told Gilliam that PWD considered the evidence against Thomas "very strong," and Griffiths said that PWD would permit Thomas to retire rather than proceed with the hearing and risk being fired. App. 31. Thomas told Gilliam he would retire, no hearing was held, and Thomas's retirement took effect on June 10, 2010. Thomas later changed his mind about retirement and contacted his union, but received no response. On September 29, 2010, he filed an appeal with the Civil Service Commission, which was dismissed as untimely. He later filed a complaint with the Pennsylvania

3

Human Relations Commission and the U.S. Equal Employment Opportunity Commission ("EEOC"); the EEOC investigated but closed its file on October 27, 2011, because it was unable to conclude that there had been a violation of the antidiscrimination statutes.

Thomas filed the Complaint in the United States District Court for the Eastern District of Pennsylvania, alleging violations of 42 U.S.C. § 1981 and the Pennsylvania Human Rights Act ("PHRA"), 43 Pa. Stat. Ann. § 955. The City moved to dismiss the § 1981 claim based on this Court's holding in McGovern v. City of Phila., 554 F.3d 114 (3d Cir. 2009), that § 1983 is the exclusive remedy for claims against state actors for violations of rights guaranteed in § 1981. The District Court denied the motion and held that because the Complaint referred to § 1983, Thomas had stated a viable claim under that statute. After discovery, the City moved for summary judgment on all claims, which the District Court granted. Thomas now appeals.

## II[1]

We apply the burden-shifting framework explained in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to Thomas's § 1983[2] and PHRA discrimination claims. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 & n.1 (1993) (assuming that

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. This Court's "review of the grant or denial of summary judgment is plenary . . . ." Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We apply the same standard the District Court applied, viewing facts and making reasonable inferences in the non-moving party's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005).

[2] It appears that the District Court treated the Complaint as adequately alleging an Equal Protection claim.

4

McDonnell Douglas applies to § 1983 claims and setting forth the elements for a prima facie case under Title VII); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 431-32 (3d Cir. 1997) (applying McDonnell Douglas to an Equal Protection claim arising from alleged employment discrimination); Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (3d Cir. 1995) (holding that the PHRA "is construed consistently with interpretations of Title VII" and applying McDonnell Douglas). At the first step, Thomas must establish a prima facie case of discrimination, meaning he must show that: (1) he is a member of a protected class; (2) he satisfactorily performed his required duties; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred "under circumstances that raise an inference of discriminatory action . . . ." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

The District Court found that Thomas did not adduce facts showing that he suffered an adverse employment action or that raise an inference of discrimination. Because we agree with the District Court that Thomas has failed to carry his initial burden on the fourth element, we will assume that Thomas experienced an adverse employment action and affirm without reaching that issue.

Thomas alleges that two circumstances give rise to an inference of discrimination: (1) the pre-disciplinary hearing was scheduled at "breathtaking" speed, whereas it took approximately a year to terminate a white PWD employee ("Comparator One"); and (2) Meiers treated him unfairly by prejudging the case and failing to consider punishment less than termination, whereas Meiers merely demoted a white PWD employee

5

("Comparator Two") who had been in an inappropriate location during work hours. Appellant Br. 18-19.

The undisputed facts do not support Thomas's assertions that the circumstances surrounding the pre-disciplinary hearing were discriminatory. While Thomas received the letter setting the hearing date only one day beforehand, that letter indicated that Thomas's union representative had been involved in scheduling the hearing. Additionally, Thomas testified in his deposition that it was his union representative, rather than the City, who refused to show him the complaint against him. Finally, contrary to Thomas's assertions that Meiers had pre-judged his case, Meiers's uncontradicted testimony indicated that a range of disciplinary options was available and that the purpose of the hearing was to permit Thomas to tell his side of the story before a disciplinary recommendation was made.

Moreover, Thomas's reliance on the two comparators is misplaced. One way to meet the fourth element of a prima facie case is to show "that the employer has treated more favorably similarly situated persons not within the protected class." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999). Here, both alleged comparators differed from Thomas. While one year elapsed between the first complaint against Comparator One and his termination (in contrast to the two months between the complaint against Thomas and his retirement), Comparator One was in fact terminated, and therefore cannot be said to have been treated more favorably than Thomas, who was permitted to retire. As to Comparator Two, he was not similarly situated because he was only alleged to have been in an inappropriate location once at the end of a work day, in

6

contrast to Thomas who was alleged to have been away from his workplace three times, in the middle of the work day.[3] Thus, Thomas has not met his "burden of demonstrating that similarly situated persons were treated differently." Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998).

We therefore agree with the District Court that there is nothing in the record that supports an inference that Thomas's race played a role in his separation from PWD.[4]

**III**

For the foregoing reasons, we will affirm.

---

[3] Thomas initially claimed that there were five additional comparators who received more lenient treatment for infractions, but four of them were in fact terminated and PWD was unable to identify the remaining one.

[4] Because Thomas has not shown that he was the victim of discrimination, we need not address whether Meiers was a policymaker whose actions could subject the City to liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), and its progeny.