NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3341
_____

CARL LOUIS ROBINSON,
as Executor of the Estate of Georgia Anne Hope,
Appellant

v.

FAIR ACRES GERIATRIC CENTER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-15-cv-06749)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 4, 2017

Before: CHAGARES, SCIRICA, and FISHER, Circuit Judges

(Filed: February 14, 2018)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

In this case, the late Georgia Anne Hope alleged that she suffered profound neglect during her time at Fair Acres Geriatric Center, a nursing home owned by Delaware County. Hope brought a claim under 42 U.S.C. § 1983, alleging Fair Acres provided deficient care in violation of her federal statutory rights. While the suit was pending, Hope died, but her lawyer never informed the trial court. The trial judge subsequently dismissed the suit with prejudice for failure to state a claim, and denied as moot the Petition to Amend Complaint and Caption to add additional defendants. Hope's Estate appeals.[1] Because Hope adequately pleaded a § 1983 claim under a failure-to-train theory of liability, we will vacate and remand.

## I.

Fair Acres Geriatric Center is a skilled nursing facility located in Lima, Pennsylvania, and owned and operated by Delaware County. Georgia Anne Hope—90 years old at the time—was admitted to Fair Acres in January 2014 and stayed through November of the same year. Hope alleged Fair Acres and its employees failed to provide her with adequate care and treatment, contending they failed to recognize that her condition was declining and that she had anemia, and that they failed to assist her when she began experiencing pain, swelling, and redness. Hope alleged that as a result she suffered infections, gangrene, dehydration, and a lower extremity sacral wound, eventually leading to the amputation of her right leg above the knee.

Hope filed suit against Fair Acres in the United States District Court for the

---

[1] In October 2016, we substituted Carl Louis Robinson, the executor of Hope's Estate, as Plaintiff–Appellant.

Eastern District of Pennsylvania in December 2015. Following dismissal of her initial Complaint, Hope filed an Amended Complaint in April 2016. In the Amended Complaint, Hope brought a § 1983 claim for violation of her federally protected rights, along with three additional causes of action against additional individual defendants Hope sought to join. Because Hope had not sought leave to add additional Defendants, she then separately filed a Petition to Amend Complaint and Caption to add additional defendants. Fair Acres filed a Motion to Dismiss, which the trial court granted in July 2016. Further, because the trial court dismissed Hope's claims with prejudice, it denied as moot the Petition to Amend Complaint and Caption. Hope's Estate appeals.

## II.[2]

Section 1983 serves as "a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws." *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) (internal quotation marks omitted). In order to state a claim, a plaintiff must first allege action under the color of state law and a violation of a federally protected right. Hope alleged both. Because it is owned and operated by Delaware County, Fair Acres's actions in connection with Hope's treatment were under the color of state law. Further, in *Grammer*, we held that provisions of the Federal Nursing Home

---

[2] The trial court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. Our review over the trial court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is plenary. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 115 (3d Cir. 2009). We review the trial court's denial of leave to amend the complaint to join additional parties for abuse of discretion. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Reform Amendments (FNHRA) "confer individual rights that are presumptively enforceable through § 1983." *Id.* at 532. Hope alleged Fair Acres's employees violated FNHRA and its implementing regulations by, *inter alia*, failing to provide sufficient staff to meet Hope's care needs; failing to prevent or document and treat Hope's pressure sores; failing to develop policies and procedures to avoid the harm suffered by Hope; and permitting licensed practical nurses to perform tasks that the applicable statutes and regulations require registered nurses or physicians to complete. These factual allegations, taken in the light most favorable to Hope, suffice to allege a violation of her federally protected rights under FNHRA.

But there remains another hurdle for Hope. Under § 1983, Hope must allege more than a violation of her rights by Fair Acres's employees. She must sufficiently plead that the alleged violations are attributable to Fair Acres itself. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). For Fair Acres to be held liable under § 1983, the alleged violation of Hope's rights must have been caused by action taken pursuant to a municipal policy or custom. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). "Customs," when referred to in the context of § 1983 actions, include only "practices of state officials . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691.

"There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee

4

works, thereby rendering the entity liable under § 1983." *Natale*, 318 F.3d at 584. First, an employee's action can be said to result from a policy or custom "where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Id.* (internal quotation marks omitted). Alternatively, a challenged action can be considered the result of a policy or custom "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* (internal quotation marks omitted). Finally, we treat actions as being the result of policy or custom

> where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Id.* (internal quotation marks omitted) (alteration in original).

In this case, the first two theories of *Monell* liability do not suffice. Beyond conclusory references to a "policy and/or custom of deprivation" at Fair Acres, Hope failed to identify any affirmative Fair Acres policy that led to her alleged neglect and injury. On the contrary, the focus of the Amended Complaint was, as Hope alleged, "the continuing failure to establish, implement and/or enforce appropriate corporate safety, training, staffing and fundamental nursing care and other policies to prevent harm to residents." A189-190. Accordingly, Hope failed to plead that the violation of her rights was attributable to the implementation of "a generally applicable statement of policy" by Fair Acres employees.

Nor did Hope allege that her injuries were caused by affirmative actions on the

5

part of a particular policymaker. In the Amended Complaint, Hope identified Administrator William D'Amico and Medical Director James Bonner, M.D., as relevant policymakers, but did not contend that either of these individuals took affirmative action that caused her injuries. Rather, Hope alleged the nursing staff failed to adequately monitor, document, and treat her condition. Hope did not plead that any of these employees were policymakers such that their actions could be fairly treated as Fair Acres's policy or custom.

Hope's claim thus hinges on the third theory of *Monell* liability—that Fair Acres's policymakers were deliberately indifferent to the inadequacy of its nursing practices, which were likely to result in the violation of patients' rights. Hope alleged Fair Acres "failed and refused to hire a sufficient number of trained and competent staff members, or to properly train and/or supervise them, in order to prevent [Hope's] injuries and or [sic] accidents." A193. As evidence of the deficiency of Fair Acres's existing practices and deliberate indifference on the part of Fair Acres's administrators, Hope alleged Fair Acres provided less registered nursing staff than other facilities in Pennsylvania and was cited with numerous patient care deficiencies.

With respect to her first contention—that Fair Acres failed to hire a sufficient number of staff—Hope failed to sufficiently allege a link between Fair Acres's hiring practices and the injuries she sustained. Hope failed to cite any cases in which *Monell* liability was assessed based on a municipality's failure to hire a sufficient number of staff. Under limited circumstances, courts have recognized claims for *Monell* liability based on a municipality's hiring decisions—in particular "where adequate scrutiny of an

6

applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[s]." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 411 (3d Cir. 1997). But Hope did not allege that any particular staff member's background was so obviously inadequate as to put Fair Acres's administrators on notice of the likelihood that patient injury would result. Instead, she alleged that collectively the hiring was inadequate, without ever pleading how the staff members were insufficient in numbers or quality or how that would have been clear to Fair Acres's administrators. Hope's reference in the Amended Complaint to the amount of registered nursing hours provided relative to other facilities in Pennsylvania and nationwide does not fill the gap. The inference the Estate asks us to draw from these numbers—that because Fair Acres provided fewer registered nursing hours than some, but not all, other facilities, violation of patients' rights was "the plainly obvious consequence," *id.*— requires too great a leap.

Nor did Hope adequately plead how a lack of nursing staff—or even registered nursing staff—caused her injuries. Hope alleged that her care was inadequate; she did not allege that staff members were not available or were present too infrequently, for example. And none of the allegations regarding the deficient care she was provided distinguishes between care from registered nursing staff and care from licensed practical nurses or other staff. Accordingly, Hope's contentions regarding Fair Acres's deliberate indifference in connection with its hiring practices fail to support a claim for *Monell* liability.

7

Hope did, however, plead adequate facts to support her contention that Fair Acres demonstrated deliberate indifference through its failure to properly train and supervise its staff. In order for a failure-to-train claim to support *Monell* liability, a plaintiff must show "that in light of the duties assigned to [the relevant employees,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). This requires a showing of the policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees." *Bryan Cty.*, 520 U.S. at 407. Additionally, "for liability to attach in this circumstance the identified deficiency in a [municipal]ity's training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391.

Hope's allegations are sufficient to meet these standards. Although Hope alleged only generally that training was inadequate, the inadequacy of training can plausibly be inferred from Hope's allegations regarding the number and character of deficiency citations issued to Fair Acres by federal and state regulators. Hope alleged that "[i]n 2014, Fair Acres Nursing Home was cited with 30 deficiencies in its patient care[, which] put the facility in the 97th percentile for number of deficiencies." A185. Hope further alleged that these deficiencies related to, *inter alia*, Fair Acres's "failure to provide adequate nursing services to its residents, failure of the nursing home staff to follow resident care policies and failure to maintain infection control on the premises from April 30, 2012 through 2014, which failures resulted in harm to its residents including Georgia

8

A. Hope." *Id.* These factual allegations, considered in the light most favorable to Hope, give rise to the plausible inference that Fair Acres administrators knew their training "failed to prevent tortious conduct by employees." *Bryan Cty.*, 520 U.S. at 407. And because Hope's injuries involved infection, gangrene, and the loss of her right leg, "the identified deficiency in [the] training program"—here, *inter alia*, failure to maintain infection control during the relevant time period—is "closely related to the ultimate injury." *Canton*, 489 U.S. at 391. Accordingly, Hope has sufficiently pleaded a § 1983 claim under a failure-to-train theory of liability.

Because we will vacate the trial court's dismissal of all claims against Fair Acres, we will necessarily vacate the court's denial of Hope's Petition to join additional defendants as moot.

### III.

For the foregoing reasons, we will vacate and remand the July 25, 2016, Order of the trial court dismissing the Amended Complaint with prejudice and denying the Petition to Amend Complaint and Caption as moot.

9