**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2772

_____

SHARON OTERO; JOSEPH ABARCO; JOSEPH ARIAS; ANTHONY BAICICH;
CHAD BATIUK; JOHN BERARDI; MIKE BURKE; JAMES CAMUS; RICHARD
CARLSON; ANGEL CORREA; ANGEL CORREA; DAVID CORTES; PETER
COSTELLO; MARLON DAVILA; JAMES DEADY; CHRISTOPHER DEPRISCO;
RICHARD EGAN; VERONICA ESCOBAR; CRAIG FARRELL; PETER FRIEDRICH;
LAWRENCE GREGG, JR.; EVAN GRUNNER; DAVID GURIEL; KEVIN HART;
ANTHONY HEINLEIN; LUIS HERRERA; KAMEEL JUMAN; JOHN MADIGAN;
DANIEL MCCARTHY; REYNALDO MENDEZ; FRANK MISA; MICHAEL
MOLLAHAN; PHILIP MONGIOVI; TERENCE MOTI; SHAWN MURPHY;
MATTHEW NEWKIRK; SPENCER NEWMAN; MICHAEL ORTIZ; THOMAS
ROJECKI; BRIAN ROSS; JOSEPH ROTONDO; RALP SALLEMI; JOSE SANCHEZ;
NEIL SIMON; PETER SIPPEL; ANTHONT STABILE; DANIEL TARPEY; JESSE
TURANO; ROBBIE L. VAUGHN; LAVERN WATSON; DEREK YUENGLING,

Appellants

v.

PORT AUTHORITY OF NEW YORK AND NEW JERSEY PORT AUTHORITY;
MICHAEL FEDORKO, In his individual and official capacities; JOHN FERRIGNO, In
his individual and official capacities; RICHARD BRAZICKI; NICHOLAS
TAGARELLI, In his individual and official capacities; MICHAEL FORD; JOHN DOES
#1-10; MICHAEL HOMAS; WILLIAM KORBUL

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. Civ. No. 2-14-cv-01655)
District Judge: Honorable Esther Salas

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 27, 2022

(Filed: July 20, 2022)

_____

OPINION[*]

_____

JORDAN, *Circuit Judge*.

Sixty-eight police officers (the "Plaintiffs") employed by the Port Authority of New York and New Jersey (the "Port Authority") brought suit under 42 U.S.C. § 1983 against the Port Authority and its leadership.  The Plaintiffs alleged, among other things, that their First Amendment rights had been violated when they were denied promotions for being "apolitical," while those with influential friends and family were promoted. The District Court dismissed their claims, and we will affirm.

## I.    BACKGROUND

This case involves the promotional practices of the Port Authority from 2011 to 2015, when some 145 officers were promoted to the rank of sergeant.[1]  Most of those promotions took place under a new procedure implemented in March 2010, pursuant to which qualified candidates could apply for promotion to sergeant after taking a written examination.  Those who passed the exam with a score of at least 70% were placed on a roster (the "2010 Roster") from which, if a vacancy became available, officers were

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The operative complaint is vague on numbers, so we speak in less than precise terms, consistent with the pleading.

randomly selected and then evaluated. Candidates were evaluated for promotion based on seven categories: (1) experience, (2) attendance, (3) discipline, (4) complaints filed with the Port Authority Civilian Complaint Investigations Unit, (5) investigation results, (6) a promotional appraisal, and (7) a panel interview. Based on scores received from each of those categories, candidates received an overall rating of "Not Recommended," "Recommended," or "Highly Recommended." (J.A. at 16, 857.) A list of recommendations was then presented to the superintendent of the Port Authority police force, who selected the candidates to be promoted.

In December 2010, the Port Authority informed 465 officers, including all of the Plaintiffs, that they had passed the written exam and were being placed on the 2010 Roster. Across multiple waves of promotional opportunities between June 2011 and March 2015, about 123 of those officers were promoted, each of whom had received either "Highly Recommended" or "Recommended" ratings during their evaluations. The Plaintiffs, meanwhile, appear to have received overall ratings of "Not Recommended," and none were promoted.

In March 2015, the Port Authority announced a new promotional process for its officers. That process included a new exam, and, in contrast to the 2010 process, which mandated random selection, it was now within the Port Authority's discretion whether to randomly select candidates from the roster. Because the exam was updated, a new roster of officers (the "2015 Roster") would supersede the 2010 Roster, which at the time still had over 300 unpromoted officers (including the Plaintiffs). Approximately 700 officers took the new exam, about 101 of whom both passed the exam and had their panel

3

interview. From that group, approximately twenty-five officers received the "Highly Recommended" rating, of whom "at least" twenty-two were promoted. (J.A. at 51.) All the Plaintiffs were among the 101 officers who passed the exam and had their interview. Again, however, they appear to have received overall ratings of "Not Recommended" and none of them were promoted.

Meanwhile, some of the Plaintiffs brought lawsuits against the Port Authority and its leadership. Those suits began in March 2014, when three of the Plaintiffs filed the action that became this case. Over the course of the next three-plus years, three more actions by other Plaintiffs followed. The District Court eventually consolidated the cases and ordered the Plaintiffs to file an amended complaint.

In their consolidated seventh amended complaint, the Plaintiffs assert multiple state and federal claims, including common-law fraud, state-law claims for violations of their free speech and association rights, and, relevant to this appeal, "violations of their rights to … association protected under the First Amendment." (J.A. at 864.) To support their First Amendment claims, the Plaintiffs alleged that the Port Authority and its leadership "gave preference in the promotional process to candidates who 'supported the [leadership's] preferred political candidates, were associated with preferred political candidates, or belonged to preferred political organizations and/or associations.'" (J.A. at 869 (quoting seventh amended complaint).). They alleged that they "were actually, or perceived by [the d]efendants as 'apolitical'" and denied promotion based on that actual or perceived status. (J.A. at 869.) And they provided a list of purported relationships between certain promoted officers and various public servants and members of the law

4

enforcement community in New York and New Jersey that they said motivated those officers' promotions. Those purported connections ranged from specific familial relationships to general allegations of "personal and/or family connections to political figures, organizations and/or associations." (J.A. at 20.) The promotion decisions, according to the Plaintiffs, were thus "tainted by cronyism and nepotism," and were not based on merit. (J.A. at 51.)

The District Court took those allegations as claims of, among other things, discrimination based on the exercise of First Amendment association rights, but it rejected those claims.[2] It explained that it could not draw a "plausible inference that [the d]efendants engaged in a 'pattern of making politically influenced promotions.'" (J.A. at 876.) There were simply insufficient facts "to establish … a causal connection linking [the] Plaintiffs' political convictions, or the lack thereof, and [the d]efendants' conduct." (J.A. at 876.) The Court also rejected the Plaintiffs' other claims.[3] This timely appeal followed.

---

[2] The District Court separately evaluated the constitutional claims as if based on First Amendment freedom of speech principles, but it concluded such claims were duplicative and subsumed in the free association claims. It explained that "the political activities that [the Plaintiffs] allege that they had the right not to participate in were purely associational – the association with political figures and organizations." (J.A. at 872.)

[3] The District Court also dismissed with prejudice the remaining federal claims raised in the Plaintiffs' complaint. Having done so, it declined to exercise supplemental jurisdiction over the Plaintiffs' state law claims and dismissed them without prejudice. The Plaintiffs do not challenge those rulings here.

## II.   DISCUSSION[4]

On appeal, the Plaintiffs make just one argument: that they successfully alleged discrimination in violation of their First Amendment right to free association.[5] According to the Plaintiffs, the Port Authority and its leadership favored "candidates who supported their preferred political candidates, associated with their preferred political candidates, associated with influential people, or belonged to their preferred political organizations and/or associations." (Opening Br. at 4.) Although the Plaintiffs allege facts that plausibly show well-connected police officers received promotions, such allegations are insufficient on their own to state a claim under the First Amendment.

We have explained that "the First Amendment protects public employees … from promotion, transfer, recalls, and other hiring decisions conditioned on political affiliation, unless the government can demonstrate that party affiliation is a proper requirement for

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the dismissal of a complaint de novo. *Haberle v. Troxell*, 885 F.3d 170, 175 n.4 (3d Cir. 2018). In so doing, we "accept all well-pleaded allegations in the complaint as true and draw reasonable inferences in [the Plaintiffs'] favor." *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009).

[5] We see no indication in the Plaintiffs' briefing that they intend to press free speech claims as well as association claims. Their failure to challenge the District Court's dismissal of any free speech claims, and their failure to reference free speech jurisprudence in their appellate briefing, means that any such arguments are forfeited. And even if the Plaintiffs did argue that their right to free speech was violated, we would agree with the District Court that any First Amendment speech claims as arguably alleged here are "entirely co-extensive with [the] association claims and must be dismissed." (J.A. at 873 (citing *Palardy v. Twp. of Millburn*, 906 F.3d 76, 79 (3d Cir. 2018) ("[The plaintiff's] speech claim must fail because it is indistinguishable from his associational claim."))).

6

the position." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270-71 (3d Cir. 2007). Moreover, the right to associate also extends to the concomitant right "to not believe and not associate" with a particular political ideology. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 (1990). There are three requirements for proving infringement of free association rights: "(1) [the plaintiffs were] employed at a public agency in a position that does not require political affiliation, (2) [they were] engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli*, 490 F.3d at 271.

The Plaintiffs fail at step two of *Galli*, as they allege nothing more than their own failure to associate with influential benefactors who might have otherwise helped them get promoted. They contend they were discriminated against because they were apolitical or, in other words, not members of the "preferred" political associations of the Port Authority. But, contrary to their conclusory statements, the Plaintiffs do not allege that the Port Authority had a preference for any particular associational choice. Instead, they allege that the Port Authority valued a candidate's association with *any* influential group or individual, regardless of political affiliation. The relationships complained of were essentially personal, and not necessarily political. First Amendment association concerns are therefore not implicated.

In reaching that conclusion, we agree with the First Circuit, which roundly rejected arguments that selection for jobs based on nepotism or personal affiliation infringes on the freedom to associate under the First Amendment. In a case like this, *Barry v. Moran*, 661 F.3d 696, 700 (1st Cir. 2011), a group of plaintiffs alleged that high-

7

ranking officials in the Boston Fire Department engaged in "a pattern of discrimination on the basis of political affiliation[.]" The plaintiffs claimed to have been denied promotions, pay increases, or transfers that went to others who were demonstrably less qualified but who "were often friends, neighbors or relatives of influential [Fire Department] employees, powerful people within city government or elected officials." *Id.* Put differently, "persons were appointed to positions in the Boston Fire Department because of who they knew, who sponsored them, and who supported them, rather than merit." *Id.* The First Circuit affirmed the district court's grant of summary judgment for the government, explaining that "the associations … are personal, not political, in nature" and that plaintiffs use the term "political" to actually "refer to office politics and interpersonal relationships rather than the conduct of government, public policy or public controversies." *Id.* at 705.

The Plaintiffs here are likewise, at most, feeling the frustration of seeing others benefit from personal favors, nepotism, and power-broking, rather than ideological preference. That may be a problem, but not a constitutional one. As the Supreme Court has held, "the First Amendment invests public employees with certain rights[;] it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)). The District Court appropriately dismissed the Plaintiffs' First Amendment claims.

III. CONCLUSION

For the foregoing reasons, we will affirm.

8