**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3293
_____

MARGARET MAZUR,
                            Appellant

v.

SOUTHWESTERN VETERANS CENTER;
DEPARTMENT OF MILITARY & VETERANS AFFAIRS

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 2:17-cv-00826)
District Judge: Honorable Joy Flowers Conti

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 4, 2020

Before:  SHWARTZ, RESTREPO and NYGAARD, Circuit Judges

(Opinion filed March 5, 2020)
_____

OPINION[*]
_____

PER CURIAM

        Pro se appellant Margaret Mazur appeals the District Court's grant of summary

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

judgment in favor of defendants the Southwestern Veterans Center ("SWVC") and the Pennsylvania Department of Military and Veterans Affairs ("DMVA"). Mazur brought claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., and retaliation in violation of 42 U.S.C. § 1981. For the reasons that follow, we will affirm the District Court's judgment.

I.

Mazur, who is white, was a DMVA employee until April 27, 2017.[1] She worked at the SWVC, one of six veterans' homes operated by the DMVA, as an accounting assistant. Mazur was supervised by Darren Lindsay in the accounting department at the time relevant to this case, and she worked with one other accounting assistant. Sharon Warden was Mazur's co-worker until late May or early June 2016, when she was replaced by a new accounting assistant. Lindsay is black. Warden self-identified her race as white on SWVC forms; Mazur believes her to be black.[2]

Mazur believes that she was treated with disdain at work by Warden and Lindsay because they talked about topics that Warden did not know about or understand. While they worked together, Mazur observed Warden taking excessive breaks, leaving money unlocked and unattended, making accounting mistakes, and failing to count money without reprimand. Mazur also reported an incident in which Warden told her that she was not allowed to use a bathroom that was not the main bathroom.

---

[1] The following facts are undisputed unless otherwise noted.

[2] A member of SWVC management identified Warden's race as biracial, while several other managers were not aware of Warden's race.

2

Mazur, Warden, and Lindsay regularly went to the bank to replenish the cash on hand in the accounting department. On May 16, 2016, Mazur went to the bank to replenish the cash on hand. Mazur then drove back to the SWVC, walked inside to the accounting office, and placed the deposit bag on Warden's chair. Warden and Lindsay were not in the office when Mazur returned. The accounting office was always locked, but numerous employees had keys. Mazur then returned to her desk, where she could see part of Warden's chair because it was pulled away from her desk.

Several minutes later, Warden returned to the office and started to count the money on her chair out of Mazur's sight. Either a minute or several minutes later, Warden asked Mazur to count the money with her. After the money was counted, Warden stated that the amount was off by $500. Lindsay and Mazur later confirmed that the money was missing. After Warden called the bank, the bank manager called and confirmed that the bank teller's drawer had balanced.[3] The police were contacted several days later, and ultimately, a detective informed members of management that he had sufficient evidence to arrest or prosecute Mazur. The money was never located.

On May 26, 2016, Mazur received notice of a pre-disciplinary conference ("PDC") for that day. Jennifer McClain-Miller, a human resources analyst at the DMVA, testified at a deposition that Mazur stated at the PDC that she had not recounted the money at the bank, that she had left the money on Warden's desk chair unattended, and

---

[3] Soon after this incident, Lindsay implemented new deposit and cash replenishment procedures to take effect from that point forward, including a requirement that two people must be present to count cash when it is brought from the bank, and that it must be transported in a locked deposit bag.

3

that Warden was left alone with the money for some amount of time before Mazur helped her count it.[4]  At the end of the PDC, Mazur was suspended without pay, pending investigation of the allegations against her.[5]

On June 2, 2016, it was decided that no criminal charges would be pursued against Mazur; members of management decided to offer her a settlement for a final warning and a time-served suspension without back pay.  Mazur's union representative accepted the settlement on June 8, 2016.[6]  In the meantime, Warden was served with a PDC notice and was disciplined with an oral reprimand around June 6, 2016.  According to McClain-Miller, Warden was reprimanded because she failed to maintain proper control of the money when she had custody of it, alone, for up to several minutes before she called Mazur to help her count it.  Warden transferred out of the accounting office to the human resources office at the SWVC at some point in late May or early June 2016.

Mazur returned to work on June 13, 2016.  She refused to sign the final warning letter that was part of her settlement.  Mazur repeatedly contacted numerous members of management and human resources in the following months to have her suspension removed from her record because she believed that it was unsupported.

---

[4]  Mazur has averred that she counted stacks of money with the bank teller as the money was distributed.

[5]  The letter stated that Mazur would receive back pay if the allegations were not substantiated.

[6]  According to McClain-Miller, Mazur agreed to the terms of the agreement in a phone call with her union representative and McClain-Miller after the union representative read the terms of the agreement and sought Mazur's consent to sign it.  Mazur claims that she was told to return to work but was not informed about the terms of the agreement.

Soon after she returned to work, Mazur filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Mazur later updated her charge of discrimination to include allegations of retaliation. She received a right-to-sue notice from the EEOC on April 7, 2017.

On April 17, 2017, Mazur submitted a letter to SWVC management stating that she believed she was being retaliated against for filing a charge of discrimination with the EEOC. Mazur again requested back pay and to have her suspension removed from her employment record. In a deposition, Mazur testified that she believed she was being harassed because Lindsay had threatened her with PDCs at least ten times after she returned to work, and because he sometimes closed her door and yelled at her or stood in front of her door and sang "you're no good, you're no good" at her, or told her, "you ain't nobody." Pl.'s Statement of Material Facts, Ex. 2 at p. 6. Lindsay testified that he sang a lot of songs in the office and that he often said "you ain't nobody" in jest to his employees. On April 27, 2017, Mazur resigned from her position.

Mazur commenced this action in the District Court in June 2017. The District Court granted defendants' early motion to dismiss Mazur's retaliation claims to the extent that she relied on her EEOC complaint as her protected activity. After discovery was complete, Mazur and defendants moved for summary judgment. The District Court granted defendants' motion and denied Mazur's. Mazur timely appealed.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for defendants. See

5

Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

Mazur argues on appeal that the District Court's decision was incorrect because it considered evidence from various witnesses for defendants who she claims "had no first-hand or personal knowledge" of the May 16 incident. See Appellant's Br. at 11. She also argues that the facts she put forward were not properly credited. However, the undisputed material facts show that defendants were entitled to summary judgment.

First, Mazur did not state a prima facie case of Title VII race discrimination either under a disparate treatment or a hostile work environment theory. To establish a prima facie case of disparate treatment, an employee must set out four elements, the last of which is that she suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination, such as where the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Mazur did not put forth evidence that her suspension occurred under

6

circumstances that give rise to an inference of unlawful race discrimination.  See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (per curiam) ("The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.") (internal quotation marks and citation omitted).  The only potential comparator Mazur identified is Warden.  Mazur contends on appeal that she and Warden were similarly situated because they had the same job and worked for the same supervisor and because Warden had previously left money unattended.  See Appellant's Br. at 11.  However, even assuming that Warden is not a member of Mazur's protected class, she and Mazur did not engage in comparable conduct that led to dissimilar disciplinary action.

The undisputed record regarding the May 16 incident indicates that Warden had sole possession of the money in the office for a few minutes, at most, before she asked Mazur to help her count it.  In contrast, Mazur was responsible for going to the bank, verifying that she received the correct amount of money, returning with the full amount to the office, and ensuring that it was secure until it was counted.  Warden is thus not a proper comparator for Mazur, as Warden appropriately received a less severe form of disciplinary action than Mazur for her smaller role in that incident.  See Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002) ("To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that . . . someone . . . is directly comparable to her in all material respects.").  Thus, summary judgment was appropriately granted to defendants on Mazur's disparate treatment claim.

Next, Mazur failed to state a prima facie case of a hostile work environment claim

7

because she did not set forth sufficient evidence that her workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Mazur has not identified race-based intimidation, ridicule, or insult that occurred at her workplace; her brief contains solely conclusory statements that she experienced her workplace as hostile. See Appellant's Br. at 18, 21, 31. At most, Mazur described a work environment in which she did not participate in the social conversations of her supervisor and co-worker and in which her co-worker was underperforming. Mazur has also not explained how Lindsay's stray comments about being "no good" or being "nobody" were discriminatory, let alone severe or pervasive enough to alter the conditions of her employment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal quotation marks and citation omitted). Thus, Mazur also has not set out a prima facie case of a hostile work environment claim.

Next, Mazur's Title VII retaliation claim also fails at the prima facie stage. Mazur does not challenge the District Court's dismissal of her claim based on her filing of an EEOC complaint. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("[A]n appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."). The only remaining potential protected activity in the record was Mazur's submission of a letter to management in April 2017, ten days before she decided

to resign. A plaintiff must set out three elements to establish a prima facie case of Title VII retaliation, the last of which is that "there was a causal connection between her . . . protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted). A plaintiff "must establish that . . . her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).

Even assuming that Mazur's decision to resign could be considered an adverse employment action here, the record does not contain evidence suggesting any circumstances between Mazur's submission of the letter and her decision to resign that could establish but-for causation of retaliation in this case. See Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 260 (3d Cir. 2017) (explaining that a plaintiff can establish but-for causation "by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity 'unusually suggestive of retaliatory motive'") (internal citations omitted); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (stating that "proffered evidence, looked at as a whole, may suffice to raise the inference" of an employer's retaliatory motive). Accordingly, summary judgment was properly granted to defendants on Mazur's remaining Title VII retaliation claim.

Finally, Mazur could not establish a retaliation claim under § 1981, as § 1981 does not contain a private right of action against state actors. See McGovern v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009). To the extent that Mazur's claim could be construed as a claim pursuant to 42 U.S.C. § 1983, Mazur's claims are barred by

9

Eleventh Amendment immunity, which protects a state or a state agency from suit unless Congress has specifically abrogated the state's immunity or the state has waived its immunity. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Karns v. Shanahan, 879 F.3d 504, 513 (3d Cir. 2018). There has been no such waiver in this case, and Congress did not intend § 1983 to abrogate a state's Eleventh Amendment immunity.[7] See Quern v. Jordan, 440 U.S. 332, 338-40 (1979). The District Court thus correctly granted summary judgment for defendants on Mazur's remaining claim.

Accordingly, we will affirm the judgment of the District Court.

---

[7] To the extent that Mazur's complaint could be construed to allege constitutional claims, they fail for this same reason.